```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------x
                              :
DEBRA STAGGERS                :    Civ. No. 3:14CV00717(SALM)
                              :
v.                            :
                              :
CAROLYN W. COLVIN,            :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :
                              :
------------------------------x
```

## RECOMMENDED RULING ON CROSS MOTIONS

This action was filed under §1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. §1383(c)(3), to review a final decision of the Commissioner of Social Security ("the Commissioner"), denying plaintiff Debra Staggers' ("plaintiff") claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff moves for an order reversing the decision of the Commissioner or, in the alternative, to remand for a new hearing. [Doc. 17], while the Commissioner moves to affirm. [Doc. #23]. For the reasons that follow, plaintiff's motion to reverse or, in the alternative, remand [**Doc. #17**] is **GRANTED**. Defendant's Motion to Affirm [**Doc. #23**] is **DENIED**. This matter is remanded to the Commissioner for further proceedings in which the ALJ obtains a medical source statement from plaintiff's treating physician concerning her

1

physical limitations, as further articulated below.

## I.  STANDARD OF REVIEW

The scope of review of a social security disability determination involves two levels of inquiry.  <u>First</u>, the court must decide whether the Commissioner applied the correct legal principles in making the determination.  <u>Second</u>, the court must decide whether the determination is supported by substantial evidence.  <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998).  **The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly.**  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

Where the Court does reach the second step, to find "substantial evidence" the Court must find evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla."  <u>Richardson v.</u>

Perales, 402 U.S. 389, 401 (1971); Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998).  The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact.  Gonzales v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998).  The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993).  The court's responsibility is to ensure that a claim has been fairly evaluated.  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

To enable a reviewing court to decide whether the determination is supported by substantial evidence, the ALJ must set forth the crucial factors in any determination with sufficient specificity.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  Thus, although the ALJ is free to accept or reject the testimony of any witness, a finding that the witness is not credible must be set forth with sufficient specificity to permit intelligible review of the record.  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988).  "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists

to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073 (JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

## II.   PROCEDURAL HISTORY

The parties do not dispute this matter's procedural history. Plaintiff filed concurrent applications for DIB and SSI on September 18, 2010, alleging disability beginning June 15, 2005. (Certified Transcript of the Record, Compiled on July 8, 2014 (hereinafter "Tr.") Tr. 377-87). Both applications were denied initially (Tr. 325-32)[1], and on reconsideration (Tr. 335-41). Plaintiff then requested a hearing before an Administrative Law Judge (Tr. 342-43), which the SSA acknowledged via letter dated September 20, 2011 (Tr. 344-51).

On May 24, 2012, Administrative Law Judge ("ALJ") Amita B. Tracy held a hearing at which plaintiff, appearing pro se[2]

---

[1] Because the medical evidence received was not sufficient to make a fair medical determination of plaintiff's claim, she was sent for a consultative examination. (Tr. 292-93). Plaintiff failed to keep this appointment, and as a result, her applications were initially denied on November 24, 2010. (Tr. 290-93); see also Tr. 508-23 (medical evaluation and psychiatric review technique dated November 19, 2010, indicating there was insufficient medical evidence and that plaintiff failed to provide certain forms and attend a consultative examination).

[2] See Tr. 376 (waiver of representation executed by plaintiff on May 24, 2012); Tr. 352 (May 24, 2011 letter from South Carolina attorney David A. Bornhorst indicating that he can no longer represent plaintiff in light of her move to Connecticut). Plaintiff later retained counsel during the administrative appeals phase of the administrative proceedings. (Tr. 77-78, 168-70).

testified. (Tr. 234-89, 353-71, 374-75). On November 29, 2012, the ALJ issued an unfavorable decision. (Tr. 174-90). On March 20, 2014, the Appeals Council denied plaintiff's request for review thereby making the ALJ's November 29, 2012 decision the final decision of the Commissioner. (Tr. 1-5, 173). Plaintiff filed this timely action for review of the Commissioner's decision.

**III. THE ALJ'S DECISION**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. See 42 U.S.C. §423(a)(1)(E). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected … to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Determining whether a claimant is disabled requires a five-step process. See 20 C.F.R. §404.1520. The Court presumes familiarity with this sequential evaluation and accordingly need not recite the specific steps herein.

Following the five step evaluation process, ALJ Tracy concluded that plaintiff was not disabled under the Social Security Act. (Tr. 185). At step one, the ALJ found that

plaintiff had not engaged in substantial gainful activity since June 15, 2005, the alleged onset date. (Tr. 149). At step two, the ALJ found that plaintiff had severe impairments of depression, breathing problems, and chronic leg pain. (Tr. 179). The ALJ also found that plaintiff's back pain was a non-severe impairment. (Tr. 180).

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 180). The ALJ specifically considered listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). (Tr. 180). Before moving onto step four, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§404.1567(c) and 416.967(c), except that she is limited to simple, routine, repetitive work. (Tr. 181). At step four, the ALJ found that plaintiff is capable of performing past relevant work as warehouse worker, as that job is generally and actually performed. (Tr. 184). Despite making this finding at step four, the ALJ also made an "alternative" finding at step five that there are other jobs existing in the national economy that plaintiff is able to perform. (Tr. 184-85). Ultimately, the ALJ

found plaintiff not disabled. (Tr. 184).

**IV. DISCUSSION**

On appeal, plaintiff asserts seven arguments in favor of reversal or remand, the most compelling of which contends that the ALJ's RFC determination is not supported by substantial evidence. Specifically, plaintiff argues that the ALJ had no basis in the record to find that plaintiff had an RFC for medium work. [Doc. #17-1, 14-26]. The Commissioner argues that the "evidence of record supports the ALJ's decision," including the opinions of consultative examiners Drs. Rojugbokan and Guarnaccia. [Doc. #23-1, 13-15].

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner," Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)(citing 20 C.F.R. §§404.1527(e)(2) and 416.927(e)(2)), "an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record. … Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Id. (quoting Lewis v. Comm'r of Soc. Sec., No. 6:00 CV 1225 GLS, 2005 WL 1899399, at *3 (N.D.N.Y. Aug. 2, 2005)). "An ALJ is not qualified to assess

a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008); see also Palascak v. Colvin, No. 1:11-CV-0592(MAT), 2014 WL 1920510, at *8 (W.D.N.Y. May 14, 2014) ("[A]dministrative law judges are unqualified to assess residual functional capacity on the basis of bare medical findings in instances when there is a relatively high degree of impairment." (compiling cases)). Indeed, "[w]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. §404.1567(a) … the Commissioner may not make the connection himself." Walker, 2010 WL 2629832, at *6 (citation and internal quotation marks omitted). Conversely, some courts have found that, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." House v. Astrue, 5:11-CV-915(GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citation omitted).

   Here, the ALJ found that plaintiff had the RFC to perform

work at the medium level of exertion, as defined in 20 C.F.R. §§404.1567(c) and 416.967(c), except that she was limited to simple, routine, repetitive work. (Tr. 181). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§404.1567(c), 416.967(c). SSR 83-10 further notes that,

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time[…]
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping []. Flexibility of the knees as well as the torso is important for this activity[.] […] In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983 (alterations added)). Here, the ALJ based his RFC finding "on the opinions of the consultative examiner and Dr. Rodriguez (sic)," and further explained,

> Giving the claimant the benefit of the doubt, due to her reported pain and breathing problems, the claimant is found limited to medium exertional work activity, including lifting and carrying 50 pounds occasionally and 25 pounds frequently, as stated in the findings above. This finding is supported by the two physical consultative examinations at Exhibits 3F and 11F. Dr. Rodriguez did not provide a physical medical source statement. No treating physician has provided any physical limitations greater than those assessed herein. The opinion of Dr. Rodriguez at Exhibit 16F, stating that the claimant is "currently unable to

> work," is afforded little weight as it is not supported by his own treatment records and provides no specific limitations or reasoning why the claimant is unable to work.

(Tr. 183-84 (sic)).

The Court finds that the ALJ's RFC determination is not supported by substantial evidence in two respects. First, there is no medical source opinion supporting the ALJ's finding that plaintiff can perform medium work, specifically with respect to the lifting, carrying, bending and stooping requirements. Second, the opinions upon which the ALJ relies in making his determination are too vague to serve as a sufficient basis to infer that plaintiff can perform the requirements of medium work.

For example, although consultative examiner Dr. Rojugbokan (Ex. 3F) opines that plaintiff is "capable of walking, listening, seeking, hearing and reasoning," (Tr. 492), he does not present any opinion as to plaintiff's ability to lift, carry, bend or stoop. Although the results of plaintiff's physical examination are largely normal, (Tr. 490-91), there was no musculoskeletal examination despite plaintiff's complaints of occasional stiffness and backaches, and pain and numbness in her legs (Tr. 487, 490). Dr. Rojugbokan's opinion is also internally inconsistent as he ultimately concludes that: "Once this patient is able to get back on her medications, it will be difficult for

her to be able to keep or maintain any kind of job." (Tr. 492). The ALJ does not discuss this inconsistency despite relying on Dr. Rojugbokan's examination to support his finding that plaintiff is capable of medium work.

It would appear that, "[a]t a minimum, the ALJ likely should have contacted Dr. [Rojugbokan] and sought clarification of his report." Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (citing 20 C.F.R. §404.1520b(c)(1)). To the extent that the Commissioner argues that this statement "appears to be a transcription error," [Doc. #23-1], "[a] reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'" Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)).

Similarly, the opinion of Dr. Guarnaccia (Ex. 11F), to which the ALJ assigned "partial weight," but relied on to support his RFC determination, concludes that plaintiff "may have problems with physical work related activities that required her to be in stressful or interactive situations." (Tr. 540). Again, although plaintiff's physical examination was largely unremarkable, Dr. Guarnaccia failed to provide any functional assessment with respect to plaintiff's physical abilities despite his conclusion

that she has "pain on her left side[…]" (Tr. 540). This conclusion is not only consistent with plaintiff's reported complaints of left-sided pain (Tr. 538), but also Dr. Guarnaccia's physical examination of plaintiff which revealed left knee pain to palpation (Tr. 539). In light of these marked inconsistencies, the opinion of Dr. Guarnaccia is "so vague as to render it useless in evaluating whether [plaintiff] can perform [medium] work." Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), superseded by statute on other grounds, as recognized by Douglass v. Astrue, No. 11-3323-cv, 2012 WL 4094881, at *1 (2d Cir. Sept. 19, 2012) (summary order). This is particularly true in light of the complex medical picture reported by plaintiff (Tr. 538), which is otherwise documented throughout the record. See, e.g., Tr. 573-81, 584-87 (complaints of tremors which were observed by physicians during examinations); id. (documented medical history of breathing problems, depression, hypertension, diabetes, and hypothyroidism); Tr. 578, 580-81, 584, 586-87 (complaints of radiating back pain, which was diagnosed as likely sciatica). Therefore, once again, the ALJ likely should have contacted Dr. Guarnaccia and sought clarification of this report. Selian, 708 F.3d at 421 (citing 20 C.F.R. §404.1520b(c)(1)); see also Anderson v. Colvin, Civil Action No. 5:12-cv-1008 (GLS/ESH), 2013

WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013)(in the context of complex medical scenarios, "a consultative examiner's use of terms 'moderate' and 'mild' without additional information, [can be] so vague as to be an insufficient basis for an inference that an individual can perform requirements of exertional levels of work," and, "[i]n such circumstances, administrative law judges following best practices might well be advised to recontact such examiners routinely for clarification.").

The June 6, 2012, opinion of Dr. Rodrigues (Ex. 18F), plaintiff's treating physician, also does not provide a physical functional assessment. (Tr. 561-63). Although Dr. Rodrigues' opinion relates primarily to plaintiff's mental capabilities, he also provides some general opinions concerning plaintiff's physical limitations. For example he notes that plaintiff's "[f]unction is limited by occasional tremors," and that plaintiff "[d]oes have chronic back pain which limits her function/ability to do certain things/movements/activities." (Tr. 561-62).[3] He

---

[3] The Court also notes the opinion of Dr. Holmes, who conducted a consultative mental status examination. (Tr. 541-43). During the examination she observed a tremor in plaintiff's left arm and shoulder, head, and mild body writhing. (Tr. 541). She further opined that plaintiff, "exhibits seemingly neurological symptoms that significantly impede her movement, including a high amplitude slow tremor (left upper extremity, arm and at times head), occasional body writhing, stiff shuffling gait, and difficulty transitioning to stand from a sitting position. MRI findings were reportedly within normal limits. Neurological and medical assessments are beyond the scope of this evaluation and this examiner's expertise, therefore **neurological and medical consultations are strongly urged to evaluate the nature and etiology of this individual's symptoms, and the impact of her symptoms on her capacity for**

also reports that plaintiff has "[c]hronic pain with radicular pain." (Tr. 562). Despite giving this opinion "great weight," the ALJ fails to address Dr. Rodrigues' statements concerning plaintiff's functional limitations. Although admittedly these statements are too vague for the ALJ to rely upon, they should have at least prompted the ALJ to obtain clarification or a physical functional capacity assessment from this doctor. See Aceto v. Comm'r of Soc. Sec., No. 6:08-CV-169 (FJS), 2012 WL 5876640, at *16 (N.D.N.Y. Nov. 20, 2012) (because "the ALJ had nothing more than treatment records and consultative reports to review," in light of plaintiff's pro se status, he had a heightened "affirmative duty to develop the record and request that Plaintiff's treating physicians assess her RFC."). This is particularly so in light of the consistency of these statements with Dr. Rodrigues' contemporaneous and other treatment notes. See, e.g., Tr. 578 (progress note dated September 30, 2011, reflecting complaints of tremors likely linked to anxiety symptoms); Tr. 580-81 (December 16, 2011, progress note reflecting plaintiff's complaints of back pain and a diagnosis of "likely sciatica"); Tr. 584-85 (progress note dated March 9, 2012, noting the presence of back pain and palpitations); Tr.

---

**employment.**" (Tr. 543 (emphasis added)). Although the ALJ ascribed "partial weight" to Dr. Holmes' opinion, he neglected to acknowledge, or heed, her recommendation for additional consultations to evaluate the nature of plaintiff's physical impairments.

586-87 (progress note dated June 6, 2012, assessing plaintiff with back pain); Tr. 591 (physical therapy assessment reflecting plaintiff's "long history" of back pain, and other history of tremors, shaking and muscle spasms for which plaintiff was then receiving treatment); id. (noting pain with certain range of motion and strength tests).

Simply put, the opinions of Drs. Rojugbokan, Guarnaccia and Rodrigues do not provide substantial evidence to support the ALJ's finding that plaintiff could lift fifty pounds occasionally and twenty five pounds frequently. The Western District of New York recently confronted a similar situation:

> Where, as here, the medical findings and reports merely diagnose the claimant's impairments without relating the diagnoses to specific physical, mental, and other work-related capacities, the administrative law judge's "determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence." Given Plaintiff's multiple physical and mental impairments, this is not a case where the medical evidence shows "relatively little physical impairment" such that the ALJ can "render a common sense judgment about functional capacity."

Palasack, 2014 WL 1920510, at *9 (internal citations omitted); see also Bathrick v. Astrue, Civil Action No. 3:11-cv-101(VLB), 2012 WL 1068985, at *4-5 (D. Conn. March 29, 2012) (finding ALJ's RFC determination that plaintiff was capable of medium work unsupported by the record where no physician opined on

15

plaintiff's lifting capacity); House, 2013 WL 422058, at *4 ("[A]lthough the RFC determination is an issue reserved for the commissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." (internal citation and quotation marks omitted)).

Accordingly, because the ALJ's RFC determination is tainted by legal error, the Court remands this case for further consideration. On remand, the ALJ should attempt to obtain statements from plaintiff's treating physician(s) regarding her physical RFC.

In light of the Court's findings above, it need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. On remand, the Commissioner will address the other claims of error not discussed herein.[4]

---

[4] The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to permit the ALJ to obtain a particularized statement from plaintiff's treating physician concerning her physical residual functional capacity.

16

**V.    CONCLUSION**

For the reasons stated, plaintiff's motion to reverse, or in the alternative remand [**Doc. #17**] is **GRANTED**. Defendant's Motion to Affirm [**Doc. #23**] is **DENIED**.

This is a Recommended Ruling. See Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with order. See Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen days may preclude appellate review. See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b); and D. Conn. L. Civ. R. 72.2; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the Recommended Ruling in this case, and then to the District Judge who issued the Ruling that remanded the case.

SO ORDERED at New Haven, Connecticut, this 17th day of June 2015.

                                                                                     **/s/**
                                        HON. SARAH A. L. MERRIAM
                                        UNITED STATES MAGISTRATE JUDGE